UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF VERMONT



A. S., by and through her guardian,

DAVID A. SEARLES,

v.                                                              Case No.: 2:25-cv-278

STATE OF VERMONT

## COMPLAINT

PARTIES

1 ) Plaintiff A. S. is an adult presently under guardianship through 14 V.S.A. § 2671 with David A. Searles as Vermont probate court appointed guardian.

2 ) Defendant is the State of Vermont.

JURISDICTION AND VENUE

3 ) This Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1331 and Title II of the Americans with Disabilities Act (A.D.A.) 42 U.S.C. § 12131 et seq.

4 ) Plaintiff is a resident of Vermont and an "individual with a disability" under Title II of the A.D.A.

5 ) Defendant is a "public entity" under Title II of the A.D.A.

CLAIM

Background:

6 ) Vermont's probate court is a court of record.

7 ) From 1979 to 2010 Vermont statute, at 14 V.S.A. §2671 as amended 1979, No. 76, § 3, generally provided for the availability of "voluntary guardianship" by petition to the probate court by any adult who desired assistance with the management of their affairs provided they could understand the nature, extent and consequences of the guardianship requested and the procedure for revoking the guardianship. During those years however, that statute excluded from voluntary guardianship all individuals determined to be mentally retarded or mentally ill, regardless if they were otherwise qualified.

8 ) During those years, mentally retarded or mentally ill individuals who could meet the other qualifications for obtaining voluntary guardianships and wished to have a guardianship established for themselves were left with the Hobson's choice of having no guardianship protection at all or of having to accept the creation of an incompetency based involuntary guardianship by the probate court under 14 V.S.A. chapter 111 subchapter 12.

9 ) Prior to plaintiff turning 18 in June 2003 her parents with her assent, petitioned the Rutland Probate Court to be granted powers of guardianship concerning her. Because of the ban against individuals determined to be mentally

retarded or mentally ill, voluntary guardianship was not an option. In order for the court to grant guardianship powers concerning the plaintiff, it had to determine plaintiff was a "mentally disabled person" as defined by 14 V.S.A. § 3061(1) as amended 1979, No. 76, § 15 under the court's involuntary guardianship jurisdiction. The probate court did this when it granted an involuntary guardianship of plaintiff on July 2, 2003.

10 ) Plaintiff through the involuntary guardianship procedure was essentially determined to be mentally incompetent despite her successful attendance and participation in high school at the time, making reasonable progress toward graduating, which she subsequently achieved. Ironically, it was the disability statutory bar preventing plaintiff from obtaining a non-incompetency based voluntary guardianship which rendered her "a person in need" of an involuntary guardianship under 14 V.S.A. §3061(1) as amended 2007, No. 186 (Adj. Sess.), § 1, as that section is worded today.

11 ) Vermont repealed the voluntary guardianship disability bar in 2010 at 2009, No. 97 (Adj. Sess.), § 9.

12 ) After the voluntary guardianship disability bar had been repealed the probate court determined plaintiff met the requirements for voluntary

guardianship. It terminated the involuntary guardianship, and granted the same guardianship powers to the parents for the plaintiff but under the court's voluntary guardianship authority.

13 ) Vermont did not and has not empowered its probate court to order expungement or retroactive voluntary guardianship status for individuals for whom involuntary guardianships were granted who were subjected to the 1979 - 2010 voluntary guardianship disability bar.

In the present:

14 ) In addition to the normal stigmatization that the involuntary guardianship determinations have upon the plaintiff, because the involuntary guardianship records regarding the plaintiff have not been expunged, those determinations necessarily imply that as a result of marked subnormal intelligence, or mental illness, incompetency, condition, or disease that the plaintiff lacked mental capacity to contract or manage her own affairs. This is the very definition of a person "adjudicated a mental defective" under federal law at 18 U.S.C. §§ 922(g)(4) & 924(a)(2) and 27 C.F.R. § 478.11. Therefore, unless the records of the involuntary guardianship are expunged plaintiff is permanently

excluded from that class of individuals who may constitutionally possess a firearm.

Conclusion:

15 ) When Vermont terminated the involuntary guardianship in 2011, it did not provide for a procedure to restore plaintiff's status diminished through the granting of that guardianship. By failing to do so, then or since, in comparison to those individuals able to receive voluntary guardianships during 1979 – 2010 the state has been limiting plaintiff's enjoyment of rights to reputation, privacy and even firearm possession that they enjoy.

16 ) To remove this limitation plaintiff is entitled to an order under the A.D.A. requiring Vermont to (a) expunge the records of the involuntary guardianship and (b) that Vermont amend the voluntary guardianship that was eventually granted to make it retroactive to July 2, 2003.

## RELIEF

Plaintiff prays for an appropriate award of declaratory, injunctive and other equitable relief against the State of Vermont, plus costs.

Dated:  March 3, 2025

*David A. Searles*

David A. Searles as Guardian of A.S.

12 Royce Street

Rutland, VT 0571